UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PEDRO DIAZ,

                        *Plaintiff*,

      v.

VIRGINIA MORROW,[1]

                        *Defendant*.

No. 24-CV-6823 (KMK)

<u>ORDER & OPINION</u>

---

Appearances:

Pedro Diaz
Coxsackie, NY
*Pro se Plaintiff*

Gabriel Cahn, Esq.
Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Pedro Diaz ("Plaintiff") brings this Action against Civilian Hearing Officer ("CHO")

Virginia Morrow ("Defendant" or "Morrow") under 42 U.S.C. § 1983, seeking monetary

damages for the asserted violation of his Fourteenth Amendment right to due process during

disciplinary proceedings that led to his confinement in a Special Housing Unit ("SHU") for 150

---

[1] As Plaintiff is no longer pursuing claims against any of the initial defendants named in this case other than Defendant Morrow, (*see* Letter from Pedro Diaz to Court (May 1, 2025) 1 (Dkt. No. 27)), the Clerk of Court is respectfully directed to amend the case caption to conform to the above.

days. [2]  (*See generally* Am. Compl. (Dkt. No. 24).)[3]  Defendant moves to dismiss the Amended

Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  (*See* Def.'s Mot. to

Dismiss ("Mot." or the "Motion") (Dkt. No. 28); *see also* Def.'s Mem. of Law in Supp. of Mot to

Dismiss ("Def.'s Mem.") (Dkt. No. 29).)  For the reasons that follow, the Motion is denied.

## I.  Background

### A.  Materials Considered

On a motion to dismiss pursuant to Rule 12(b)(6), the Court considers the allegations in

"'the pleadings themselves,' because 'to go beyond the allegations in the Complaint would

convert the Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56.'"  *Watson*

*v. New York*, No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023) (alterations

adopted) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275

(S.D.N.Y. 2002)).  "Nevertheless, the Court's consideration of documents attached to, or

incorporated by reference in the Complaint, and matters of which judicial notice may be taken,

would not convert the motion to dismiss into one for summary judgment."  *Id.*; *see also Bellin v.*

*Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (noting that "when ruling on Rule 12(b)(6) motions to

dismiss," courts may "consider the complaint in its entirety . . . , documents incorporated into the

---

[2] Plaintiff does not define the term "CHO" used in his Amended Complaint, but the Court notes that the individuals presiding over disciplinary hearings held by DOCCS are Civilian Hearing Officers, a term commonly abbreviated "CHO."  *See Thomas v. Calero*, 824 F. Supp. 2d 488, 493 (S.D.N.Y. 2011) ("[The plaintiff] alleges that [the] defendant . . . a Civilian Hearing Officer ('CHO'), denied him the right to call two witnesses[ . . . ] at his disciplinary hearing, resulting in a deprivation of his right to procedural due process.").  The Court assumes that Defendant Morrow held this position.

[3] Unless otherwise noted, all citations to record materials refer to page numbers as generated by the Court's Electronic Case Filing system, which appear on the top-right corner of each page of the Parties' filings.

complaint by reference, and matters of which a court may take judicial notice" (internal quotation marks and citation omitted)).

When reviewing a complaint filed by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at \*4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at \*4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics and citation omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at \*2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the] plaintiff['s] possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks and citation omitted), and "[the plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at \*1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)).

Plaintiff alleges certain additional facts in his opposition memorandum, and attaches portions of certain DOCCS materials. (*See* Pl.'s Answer to Mot. to Dismiss ("Opp'n") (Dkt. No. 30).) In light of Plaintiff's pro se status, the Court considers the additional allegations in his opposition and the attached partial copy of his hearing disposition record. *See Monroe v. Jouliana*, No. 20-CV-6807, 2021 WL 6052162, at \*1 n.2 (S.D.N.Y. Dec. 20, 2021) (considering allegations raised for the first time in such materials); *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion.").

In response, Defendant submitted what she represents is a complete copy of that disposition record.  (*See* Decl. of Gabriel Cahn in Supp. of Mot. to Dismiss, Ex. A ("Ex. A") (Dkt. No. 32-1).)  The Court determines that it is appropriate to rely on the complete version of the hearing disposition record, rather than the partial version attached to Plaintiff's Opposition. After all, "[o]n a motion to dismiss, a court may consider documents that the plaintiff either possessed or knew about and upon which the plaintiff relied in bringing the suit."  *Shaw v. U.S. Postal Serv.*, No. 09-CV-6617, 2010 WL 3749233, at *9 (S.D.N.Y. Aug. 16, 2010) (alterations adopted and quotation marks omitted) (quoting in part *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000)), *report and recommendation adopted*, 2010 WL 3767115 (S.D.N.Y. Sept. 27, 2010); *Castillo v. Snedeker*, No. 21-CV-11109, 2023 WL 7625882, at *1 n.2 (S.D.N.Y. Nov. 9, 2023) ("The Court may properly consider the inmate misbehavior report and disciplinary hearing disposition as they are explicitly referred to in the Complaint and therefore incorporated by reference.").  It is apparent that Plaintiff both possessed and relied upon the record of his disposition hearing when he brought suit; indeed, he affirmatively attempted to place this document before the Court in connection with his Opposition.  Accordingly, the Court may consider the entirety of that record.

B. Factual Background

As alleged in Plaintiff's Amended Complaint and the other materials described above, in May 2022, Sullivan Correctional Facility, where Plaintiff was detained, was in lockdown due to the COVID-19 pandemic.  (Am. Compl. 4.)  Plaintiff alleges that individuals incarcerated at the facility were permitted to come out of their cells for two hours each day.  (*Id.*)  This procedure would occur in shifts: individuals housed in the "West [S]ide" of the facility would have the first

recreation period, from 6:00 PM to 8:00 PM, and then individuals in the "East [S]ide" of the facility would have the second recreation period, from 8:00 PM to 10:00 PM. (*Id.*)

At 8:00 PM on May 12, 2022, while this lockdown schedule was in effect, the individuals housed in the West Side were returning from their recreation period. (*Id.*) Rather than reentering the West Side to return to his cell, one individual, named "Phillips," remained outside. (*Id.*) Phillips purportedly hid from the officers, who could not see him. (*Id.*) An Officer named "Johnson" let the individuals housed in the East Side out for their recreation period without first completing a round of the West Side to ensure that all individuals housed there were locked in their cells (i.e., "lock in"). (*Id.*) When the East Side cells were opened, Phillips got into an argument with another incarcerated person, whose identity was unknown to Plaintiff. (*Id.*)

While this altercation occurred, Plaintiff was in a kiosk using his tablet. (*Id.*) The aforementioned Officer Johnson told Phillips to go back to the West Side for lock in, as he was not supposed to be outside of his cell. (*Id.*) After Phillips went to his cell, Johnson came to Plaintiff and told him to lock in. (*Id.*) Plaintiff protested, stating that he did "nothing wrong" and "needed to call [his] family." (*Id.*) The Officer again told Plaintiff to return to his cell, which he did. (*Id.*) Approximately 20 minutes later, Plaintiff says that Sergeant Stafford came to his unit with "around" 10 to 12 officers, two of whom came to his cell. (*Id.*) These officers asked Plaintiff if he had a fight with Phillips. (*Id.*) Plaintiff responded that he had not had a fight with anyone. (*Id.*) One of the officers told Plaintiff that Stafford had instructed them to take Plaintiff to the hospital, to evaluate him for any injuries. (*Id.*)

Plaintiff was then taken to the hospital, where he was checked by a nurse. (*Id.*) That nurse told the Sergeant that Plaintiff had no injuries suggesting he had been in a fight. (*Id.*) One of the officers told Sergeant Stafford to send Plaintiff back to his cell. (*Id.*) They began the

escort, but while this was occurring, Officer Johnson received a call at his desk, which he answered. (*Id.*) Officer Johnson then told the officers escorting Plaintiff "not to put [him in his] cell" but instead to put him in "an empty cell," because the Sergeant had instructed them to search his cell. (*Id.* at 4–5.) Two Officers, Johnson and Sepulveda, searched Plaintiff's cell. (*Id.* at 5.) When they left his cell, Sepulvera held "somet[h]ing in his hand." (*Id.*) They made Plaintiff pack up his things, and he was moved to another cell. (*Id.*)

On May 13, 2022, two officers came to Plaintiff's cell and told him that the Sergeant wanted to talk to him. (*Id.*) He was searched and brought to the Sergeant's office. (*Id.*) There, he saw an Officer Dadezzio, who said he could "put on [Plaintiff] [l]ike [he] was the one that hit him" if Plaintiff refused to "tell him who hit Prisoner Phillips." (*Id.*) Plaintiff responded that he could not accuse anyone because he "did not do anything to that [p]erson." (*Id.*) Officer Dadezzio exited the office, and Plaintiff overheard a conversation between Dadezzio and Stafford. Stafford asked Dadezzio if Plaintiff "told him who did it," and Dadezzio responded "no[,] he did not [tell] him." (*Id.*) Stafford then instructed Dadezzio to take Plaintiff to the SHU. (*Id.*) Plaintiff was placed in the SHU on May 13, 2022, although, he says, he was not involved in the incident in question. (*Id.*) Plaintiff says that another individual, William Figueroa, knew that he was innocent and would state that he had nothing to do with what happened to Phillips. (*Id.*)

On approximately May 12, 2022, Plaintiff was charged with several behavioral infractions: assaulting another incarcerated person, fighting, creating a disturbance, possession of a weapon, and violent conduct. (*Id.* at 3.) Disciplinary proceedings were held from May 16, 2022, to May 26, 2022. (*Id.*) During those proceedings, Plaintiff alleges that audio and video recording of the entire incident was wrongfully excluded from evidence. (*Id.*; *see also* Opp'n 1–2.) Plaintiff further alleges that this audio and video evidence would have "conclusively

6

exonerated [Plaintiff] as being the assailant." (Opp'n 1.) Plaintiff also claims that the officer presiding over the hearing, Morrow, denied him the opportunity to call as a witness a correction officer—likely Sepulvera—who had been present while his cell was being searched. (Am. Compl. 3, 5; *see also* Opp'n 1.) He claims that this denial was in violation of DOCCS's own rules and regulations. (Am. Compl. 3, 5.) Further, Plaintiff alleges that Defendant did not permit the alleged victim of his behavioral infractions (presumably referring to Phillips) to be produced as a witness. (Am. Compl. 3; Opp'n 1.) Plaintiff claims that a "confidential informant," who purportedly gave the testimony that formed the basis of Morrow's decision, "was not subject to an independent credibility assessment," and that Morrow deliberately disallowed contemporaneous audio/video evidence that "would establish that the [informant] was lying." (Opp'n 2.)

Plaintiff further asserts that video camera recordings of his hospital visit would show that he did not have any injuries, and that he cannot grasp anything with his right hand, not because of an injury from a fight, but due to repeated surgeries.[4] (Am. Compl. 5.) Plaintiff claims that Defendant prevented any "reliable evidence" from being presented, on the basis that Defendant "was bias[ed] and had prejudged [Plaintiff's] guilt." (Opp'n 2.) Plaintiff claims that he consistently denied the assault and "claimed [he had been] set-up." (*Id.* at 3.) According to Plaintiff, if the victim and the CO had been given a chance to testify, they would "have corroborated" his defense that he had nothing to do with the incident. (*Id.*) Plaintiff claims "nothing could be more prejudicial" than the "entirety of his only defense" being "precluded by

---

[4] Materials submitted in connection with the disciplinary proceeding suggest that Plaintiff would have argued that his right hand is incapable of making a fist and therefore he could not have beaten another individual. (Ex. A, at 6.)

[Morrow]" in this way.  (Opp'n 4.)  He further asserts that Defendant was "neither fair nor impartial" based on his denial of critical witnesses.  (*Id.* at 3.)

Plaintiff asserts that his sole injury from these purportedly wrongful acts was that he was sent to the Special Housing Unit ("SHU") for 150 days and lost all privileges.  (Am. Compl. 3.) Specifically, he lost access to the commissary, phone privileges, and tablet access.  (*Id.* at 5.)  In his Opposition, Plaintiff further asserts that he "was transferred to [the] Upstate SHU" which was "too far for friends and family to travel," resulted in him "los[ing] out on graduation for a GED," suffered "stress and mental anguish" and "all [of his] property was lost" which included his "legal materials."  (Opp'n 2.)  Finally, he claims, he was subject to "mental anguish as a result of solitary confinement" in the SHU.  (*Id.*)

Plaintiff alleges that he did not file a grievance at the facility because the grievance process "does not handle such issues."[5]  (Am. Compl. 6.)  He also claims that he appealed to the Commissioner of DOCCS, an appeal which was denied.  (*Id.* at 7.)  As relief, Plaintiff requests the return of all "documents concerning [his] administrat[ive] appeal [that were] in [his]

---

[5] Given that "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement," *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016), there is no need for the Amended Complaint to "plead—or the facts [to] establish— that [the Plaintiff] exhausted those remedies," *Moore v. Booth*, 122 F.4th 61, 68 (2d Cir. 2024). And while in some circumstances, the Court could dismiss a complaint sua sponte due to an obvious failure to exhaust administrative remedies, Defendant has not raised the matter of exhaustion, and at this juncture there is no "record" from which it would be "unmistakably clear that an appropriate administrative procedure was available to [Plaintiff], that he was required to exhaust his administrative remedies, and that he failed to do so as required by the PLRA." *Mingues v. Nelson*, No. 96-CV-5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004); *see similarly Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at *2 (S.D.N.Y. July 12, 2012) (noting that the court had sua sponte identified an exhaustion issue, and explaining that the grievance procedure covered the plaintiff's claims, but nevertheless the plaintiff was mistakenly advised by officials that his claim was not grievable, and therefore not considering the exhaustion issue as a basis for dismissal).

property[,] which is lost from being transferred," and on which basis he filed an Article 78 proceeding.  (*Id.*)  Plaintiff says that he seeks $75,000 in damages for wrongful confinement and the loss of privileges, as well as his court filing fees.  (*Id.*)

As noted, Plaintiff commenced a CPLR Article 78 proceeding in state court challenging the outcome of the disciplinary proceeding.  *See Diaz v. Annucci*, 201 N.Y.S.3d 714 (App. Div. 2023).  The Appellate Division for the Third Department concluded that the determination as to the misbehavior report resulting from the alleged fight had to be annulled based on the denial of Plaintiff's right to call a witness; the defendants in the state court case conceded, and the Appellate Division for the Third Department agreed, that the misbehavior report generated after the search of petitioner's cell likewise should be annulled because Plaintiff was denied the opportunity to call one of the officers as a witness.  *See id.* at 715–16.[6]

C.  Procedural Background

Plaintiff commenced this Action on September 3, 2024.  (*See* Compl. (Dkt. No. 1).)  Plaintiff was granted leave to proceed in forma pauperis on September 10, 2024, (*see* Order Granting IFP Application (Dkt. No. 5)), and the case was assigned to this Court on October 15, 2024, (*see* Dkt. (Notice of Case Assignment dated Oct. 15, 2024)).  On November 20, 2024, Plaintiff wrote to the Court seeing leave to amend his Complaint.  (*See* Letter from Pedro Diaz to Clerk of Court (Nov. 13, 2024) (Dkt. No. 11).)  The Court granted this request by memo endorsement on November 25, 2024.  (*See* Mem. Endorsement dated Nov. 25, 2024 (Dkt. No.

---

[6] Of course, the outcome of the Article 78 proceeding does not compel the conclusion that Plaintiff has stated a claim for violation of his due process rights under the United States Constitution.  *See, e.g.*, *Javier v. Russo*, No. 21-CV-7097, 2023 WL 5532468, at *8–9 (S.D.N.Y. Aug. 28, 2023) (concluding, in case where the plaintiff had succeeded in an Article 78 proceeding, that the plaintiff nevertheless failed to state a procedural due process claim).

9

12).)  Plaintiff's Amended Complaint was received on March 25, 2025.  (*See* Am. Compl.)

Plaintiff's Amended Complaint named three defendants: Anthony Annucci, Stacy Bennett, and

Virginia Morrow.  (*Id.*)

On April 23, 2025, the then-defendants filed a letter motion in anticipation of filing a

Motion to Dismiss.  (*See* Letter from Gabriel Cahn, Esq. to Court (Apr. 23, 2025) (Dkt. No. 25).)

The Court set a briefing schedule for the Motion.  (*See* Order dated Apr. 23, 2025 (Dkt. No. 26).)

In response to the pre-Motion letter from the then-defendants, Plaintiff voluntarily dismissed

Superintendent Stacy Bennett and former Acting Commissioner Anthony J. Annucci from the

suit.  (*See* Letter from Pedro Diaz to Court (May 15, 2025) 1.)

On May 30, 2025, Defendant Morrow moved pursuant to Federal Rule of Civil Procedure

12(b)(6) to dismiss the claim against her for failure to state a claim.  (Mot.)  Plaintiff filed his

opposition on June 24, 2025.  (*See* Opp'n.)  Defendant filed her reply on July 14, 2025.  (*See*

Reply Mem. of L. ("Reply") (Dkt. No. 31).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations, quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted).

Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723

F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, as noted, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted).  As described above, when a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6 (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones*, 2013 WL 5300721, at *2 , and "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers*, 282 F.3d at 153.

B.  Analysis

Read charitably, Plaintiff's Amended Complaint raises a claim under 42 U.S.C. § 1983 that his procedural due process rights under the Fourteenth Amendment were violated.  (*See generally* Am. Compl.)  Defendant moves to dismiss Plaintiff's Amended Complaint, asserting that Plaintiff's allegations do not state a procedural due process claim.  (Def.'s Mem. 3.)

12

Defendant argues both that Plaintiff has failed to allege a liberty interest protected by the Fourteenth Amendment, and that Plaintiff has not alleged any procedural error or resulting prejudice. (*Id.* at 3–7.) For the reasons that follow, however, the Court concludes that Plaintiff's Amended Complaint both alleges a liberty interest protected by the Fourteenth Amendment and that he was prejudiced from the erroneous exclusion of a witness at his disciplinary hearing.

The Due Process Clause prohibits the states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Under this Amendment, an incarcerated person "has the right not to be deprived of a protected liberty interest without due process of law." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *see also Allah v. Depaolo*, No. 17-CV-6313, 2019 WL 1649021, at *2 (S.D.N.Y. Apr. 4, 2019) (same). In evaluating the viability of a procedural due process claim under the Fourteenth Amendment, a court will "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Francis v. Fiacco*, 942 F.3d 126, 141 (2d Cir. 2019) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)); *see also Bangs v. Smith*, 84 F.4th 87, 97 (2d Cir. 2023) (same). In other words, "to present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and quotation marks omitted).

### 1. Protectable Liberty Interest

Plaintiff alleges that, as a result of the hearing at which Morrow denied him the opportunity to call witnesses and present evidence, he was placed in the SHU for a period of 150

days.  (Am. Compl. 5.)  In response, Defendant argues that Plaintiff cannot "merely rely" on the intermediate duration of his confinement in the SHU to state a protectable liberty interest, but instead must allege facts that describe how the conditions of his disciplinary segregation imposed an "atypical and significant hardship relative to the normal conditions."  (Def.'s Mem. 4 (quotation marks omitted).)  In his opposition, Plaintiff includes some further allegations about the consequences of his SHU confinement, (Opp'n 2), which, Defendant claims, are nevertheless insufficiently atypical to sustain a due process violation, (Reply 5).

As already described, to state a due process claim under the Fourteenth Amendment, an incarcerated person "must demonstrate a deprivation of a liberty interest protected by the Due Process Clause itself, or a violation of a state-created liberty interest."  *Davis v. Collado*, No. 16-CV-7139, 2018 WL 4757966, at *9 (S.D.N.Y. Sept. 30, 2018); *see also Nova v. Martuscello*, No. 24-CV-1574, 2025 WL 2733830, at *10 (S.D.N.Y. Sept. 24, 2025) (same).  Prison discipline, including restrictive confinement within a prison, implicates a protected liberty interest "when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)); *see also Nova*, 2025 WL 2733830, at *11 (same).  "When evaluating whether an [incarcerated person] has suffered 'atypical and significant hardship,' courts must compare the conditions imposed upon that inmate with the conditions 'endured by prisoners in [the] general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration.'"  *Nova*, 2025 WL 2733830, at *11 (quoting *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999)); *see also Colon v. Howard*, 215 F.3d 227, 230 (2d Cir. 2000).  In determining the severity of the hardship an incarcerated person experienced, courts are meant to consider "both the duration and

14

the conditions of confinement." *Nova*, 2025 WL 2733830, at *11 (citing *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 606 (S.D.N.Y. 2009)).

While the Second Circuit has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," it has established "guidelines" for evaluating such claims. *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004); *see also Nova*, 2025 WL 2733830, at *11 (same). Specifically, the Second Circuit has instructed that in a case involving a plaintiff who has been confined in the SHU for an "intermediate duration," falling between 101 and 305 days, the "development of a detailed record . . . is required" to demonstrate how the conditions of confinement compared to "ordinary prison conditions." *Palmer*, 364 F.3d at 64; *see also Nova*, 2025 WL 2733830, at *11 (same). Indeed, where courts have dismissed these claims "before trial" even "on defendants' motions for summary judgment, [the Second Circuit] ha[s] remanded for amplification of the record and more refined fact-finding." *Colon v. Howard*, 215 F.3d 227, 230 (2d Cir. 2000) (citing *Welch v. Bartlett,* 196 F.3d 389, 393–95 (2d Cir.1999); and then citing *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir. 1997); and *Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir. 1997)).

In light of these precedents, many district courts have concluded that "where, as here, the duration of a plaintiff's confinement in SHU falls in the 'intermediate' range, 'the fact-finding required by the Second Circuit cannot occur on a motion to dismiss.'" *Chavez v. Gutwein*, No. 20-CV-342, 2021 WL 4248917, at *7 (S.D.N.Y. Sept. 17, 2021) (quotation marks omitted) (quoting *Mena v. Gutwein*, No. 19-CV-3882, 2020 WL 5370708, at *4 (S.D.N.Y. Sept. 8, 2020)); *see also Nova*, 2025 WL 2733830, at *11 ("Here, [the p]laintiff alleges he was confined in the SHU for 270 days, which falls squarely within, and at the higher end of, the 'intermediate' range. Therefore, the [c]ourt declines to dismiss [the p]laintiff's procedural due process claims

15

based merely on the length of his confinement."); *Chavez*, 2021 WL 4248917, at *8 (explaining that the denying motion to dismiss where "[the p]laintiff's 117-day confinement in SHU [fell] in the intermediate range, and thus, 'development of a detailed record of the SHU conditions he was subject[ed] to would be advisable'") (quoting *Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *5 (S.D.N.Y. Feb. 17, 2015))); *Mena*, 2020 WL 5370708, at *2, *5 (denying in part motion to dismiss where the plaintiff alleged that he was detained in SHU for 181 days, suffered lost wages and privileges, and endured "mental and emotional anguish"); *Jackson v. Relf*, No. 19-CV-193, 2020 WL 3038607, at *6–7 (N.D.N.Y. Jan. 6, 2020) (same with respect to a plaintiff who spent 117 days in disciplinary confinement and alleged that he was temporarily deprived of his property), *report and recommendation adopted*, 2020 WL 1025297 (N.D.N.Y. Mar. 3, 2020); *Falls v. Campbell*, No. 17-CV-35, 2019 WL 6251245, at *7 (S.D.N.Y. Nov. 21, 2019) ("While [the] [p]laintiff's [third amended complaint] is far from detailed, given the intermediate length of [his] confinement and the indication that [he] may have endured unusual keeplock conditions, development of a detailed record is advisable before the [c]ourt will dismiss the claim for failure to plead a protected liberty interest." (citation, quotation marks, and alterations omitted)); *Johnson v. Schiff*, No. 17-CV-8000, 2019 WL 4688542, at *22 (S.D.N.Y. Sept. 26, 2019) (denying in part motion to dismiss due process claim for failure to allege a liberty interest where the plaintiff had been sentenced to 180 days in punitive segregation, because "development of a detailed record of the conditions . . . [was] required"); *Keyes v. Annucci*, No. 18-CV-372, 2019 WL 4602240, at *14 (N.D.N.Y. Sept. 23, 2019) (same with respect to a plaintiff detained in SHU for 150 days, and explaining that, because the plaintiff's duration of confinement fell in the intermediate range, "a closer consideration of the conditions of confinement and the circumstances [was] warranted to determine whether even the

16

mostly normal conditions alleged would be considered to impose an atypical and significant hardship"); *Koehl v. Bernstein*, No. 10-CV-3808, 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011) (same with respect to a plaintiff who spent 120 days in SHU, and concluding that, on a motion to dismiss, the court could not dismiss the plaintiff's due process claim "for failure to describe in detail the conditions of his confinement"), *report and recommendation adopted*, 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011).  In light of Plaintiff's allegations that he was confined in the SHU for 150 days, solidly within the "intermediate range," as well as his claim that he was denied access to all privileges, including phone calls and tablet access, the Court will not dismiss his Amended Complaint at this juncture for failure to allege a protected liberty interest.[7]

---

[7] In Defendant's Memorandum of Law in Support of the Motion to Dismiss, Defendant cites *White v. Gutwein*, 20-CV-4532, 2022 WL 2987554, at *8 (S.D.N.Y. July 28, 2022), and *Edwards v. Gutwein*, No. 21-CV-3183, 2022 WL 1093558, at *5 (S.D.N.Y. Apr. 7, 2022), as support for the proposition that allegations of 150-day confinement and lost privileges "do not establish an atypical and significant hardship" sufficient to satisfy the procedural due process standard.  (Def.'s Mem. 4–5.)  However, this position is far from universal, and many district courts applying the Second Circuit's test conclude that commitment to disciplinary or administrative segregation for periods in the "intermediate" range—and indeed shorter than the period Plaintiff alleges here—preclude dismissal without additional factfinding.  *See, e.g.*, *Campbell v. Lantz*, No. 19-CV-1512, 2019 WL 6771417, at *8 (D. Conn. Dec. 12, 2019) ("Plaintiff's Complaint shows that he was committed to Administrative Segregation for more than 101 days.  Such a period of segregated confinement would ordinarily preclude dismissing a claim without fact-finding.  Plaintiff may therefore meet the first *Sandin* requirement of a deprivation of a liberty interest imposing an atypical and significant hardship; and, further factfinding is needed." (quotation marks omitted)).

Mindful that "sentences within [the 101–305 day] range[ . . .] require a district court to articulate specific findings of the conditions of the imposed confinement relative to ordinary prison conditions before determining whether such confinement is atypical," *Reynoso v. Selsky*, 292 F. App'x 120, 123 (2d Cir. 2008) (summary order), and in light of Plaintiff's *pro se* status, the Court is persuaded that additional factfinding is necessary based on the duration of confinement and facts alleged in Plaintiff's Amended Complaint.

17

### 2. Procedural Error or Resulting Prejudice

When a court considers whether an incarcerated person has received process sufficient to satisfy the requirements of the Due Process Clause, it looks to the factors set out by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See, e.g.*, *Proctor v. LeClaire*, 846 F.3d 597, 609–10 (2d Cir. 2017) (describing the *Mathews* factors as "[g]uiding" the "analysis"). "The appropriate process depends on the balancing of [the] three [*Mathews*] factors: (1) 'the private interest that will be affected by the official action;' (2) 'the risk of erroneous deprivation of such interest through the procedures used;' and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017) (quoting *Mathews*, 424 U.S. at 335), *as amended* (July 18, 2017).

A disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004); *see also George v. Cnty. of Westchester*, No. 20-CV-1723, 2021 WL 4392485, at *11 (S.D.N.Y. Sept. 24, 2021) (same). "In the context of prison disciplinary hearings, the Second Circuit has made clear that its 'conception of an impartial decisionmaker is one who, inter alia, does not prejudge the evidence and who cannot say, with . . . utter certainty . . . , how he would assess evidence he has not yet seen.'" *Rahman v. Acevedo*, No. 08-CV-4368, 2011 WL 6028212, at *7 (S.D.N.Y. Dec. 5, 2011) (italics omitted) (quoting *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)). As relevant here, "[a]dministrators serving as adjudicators are presumed to be unbiased." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996).

18

However, it bears noting that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). Ultimately, a guilty finding in an inmate disciplinary hearing only needs to be supported by "some evidence from which the conclusion . . . could be deduced." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (quotation marks omitted). The Second Circuit has explained that "[j]udicial review of this 'some evidence' standard is narrowly focused." *Sira v. Morton*, 380 F.3d 57, 76 (2d Cir. 2004). Such review "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (quoting *Hill*, 472 U.S. at 455–56).

Finally, any procedural infirmities are individually and collectively subject to harmless error analysis. *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) ("[I]t is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial."). A court may find "harmless error" where an incarcerated person "fails to show that the error negatively affected the outcome of the proceeding, or that it impaired the [person's] ability to prepare a defense." *Marino v. Humphrey*, No. 05-CV-6571, 2006 WL 2786182, at *5 (S.D.N.Y. Sept. 27, 2006); *see also Brown v. Venettozzi*, No. 18-CV-2628, 2022 WL 3867958, at *8 (S.D.N.Y. Aug. 30, 2022) (concluding prison officials' failure to provide a logbook was harmless error where plaintiff received the requested evidence from another source).

Defendant argues that Plaintiff has provided no basis "to infer that CHO Morrow's denial of his request to call two witnesses, review video, or access his own medical records deprived him of constitutionally sufficient process—or that these decisions prejudiced the outcome of his hearing." (Def.'s Mem. 6.) Defendant relies on the principle that officials retain the "discretion to keep the hearing within reasonable limits" including the discretion to refuse to call witnesses that "may create a risk of reprisal or undermine authority," as well as the principle that witnesses may be denied as irrelevant or unnecessary. *Id.* (quoting *Castillo*, 2023 WL 7625882, at *5). Defendant further argues that, even if Plaintiff had been able to call the witnesses, his Amended Complaint provides no basis to conclude that the testimony would have impacted the outcome of the disciplinary hearing. (*Id.* at 7.)

The Court disagrees. At this stage, Plaintiff has adequately alleged that he did not receive the process he was constitutionally owed. He alleges: (1) that he was denied the chance to call any witnesses, and (2) that he was denied the opportunity to produce certain pieces of exculpatory evidence. The first allegation, under the circumstances, would be sufficient on its own to state a claim under the Due Process Clause, and so the Court need not reach the question of whether Plaintiff's remaining allegations would, on their own, support a claim under the Fourteenth Amendment. *See Stroud v. Stover*, No. 23-CV-1687, 2024 WL 4513070, at *8 (D. Conn. Oct. 17, 2024) (allegations that the plaintiff was told he would not be able to call witness because he had been told "she could not testify in person" was sufficient, on a motion to dismiss, to sustain due process claim); *Ortiz v. Orleans Cnty.*, No. 12-CV-1555, 2022 WL 1242486, at *2, 9 (W.D.N.Y. Mar. 15, 2022) (holding that allegations that the plaintiff "was not provided the opportunity to call witnesses or present evidence in his defense, and despite repeated requests by [the plaintiff], video of the incident was not reviewed," were plausible allegations that he had

20

been denied due process under the Fourteenth Amendment), *report and recommendation adopted*, 2022 WL 1241704 (W.D.N.Y. Apr. 26, 2022); *Caimite v. Venettozzi*, No. 17-CV-919, 2018 WL 6069458, at *7 (N.D.N.Y. Oct. 29, 2018) (concluding that, where the complaint offered "no indication . . . that [the hearing officer] offered 'some explanation' as to why he denied the witness, as is required under the Fourteenth Amendment" the pro se plaintiff "ha[d] adequately alleged a due process claim with regard to [the hearing officer's] failure to allow [the plaintiff]" to present the witness), *report and recommendation adopted*, 2018 WL 6068414 (N.D.N.Y. Nov. 20, 2018).  Taken together, the allegations plausibly support the claim that Plaintiff did not receive due process in violation of the Fourteenth Amendment.  *See, e.g.*, *Marino v. Ragen*, 332 U.S. 561, 569 n.10 (1947) ("Perhaps none of the allegations [that petitioner had inadequate time to prepare his defense, was denied counsel, and that a forced confession was used as evidence] considered separately would establish a deprivation of due process, yet with the whole picture before the court a violation of constitutional rights would be apparent." (Rutledge, J. concurring)); *Walker v. Bellnier*, 146 F.4th 228, 236 n.5 (2d Cir. 2025) ("We emphasize that our holding is based on the totality of the circumstances that [the plaintiff] describes. We take no position as to whether some of the facts here, viewed in isolation, would raise a triable issue as to the degree of process [the plaintiff] received.").

Although it is true that prison officials may, under some circumstances, disallow witnesses at hearings without violating due process, they may do so when "the denial is 'logically related to preventing undue hazards to institutional safety or correctional goals,'" or if, as described above, such witnesses are irrelevant, unnecessary, or refuse to testify.  *Allah v. Semple*, No. 18-CV-887, 2018 WL 3733970, at *5 (D. Conn. Aug. 6, 2018) (quoting *Ponte v. Real*, 471 U.S. 491, 497 (1985); and then citing *Jamison v. Fischer*, 617 F. App'x 25, 27 (2d Cir.

21

2015) (summary order)); *see also King v. McIntyre*, No. 11-CV-1457, 2015 WL 1781256, at *24 (N.D.N.Y. Apr. 8, 2015) ("Here, [the d]efendant . . . reasonably concluded that the proposed witnesses would offer duplicative testimony."). Based on Plaintiff's complaint, Morrow "did not deny the witnesses for any reason logically related to correctional goals or for irrelevance or lack of necessity." *Allah*, 2018 WL 3733970, at *5. Accordingly, this allegation supports a due process violation, at least at the motion to dismiss stage. *Id*; *see also Davis v. Rinaldi*, No. 19-CV-504, 2025 WL 2403121, at *18 (D. Conn. Aug. 19, 2025) (concluding that the plaintiff's claim that he "named potential witnesses, but . . . the hearing officer did not attempt to find and interview those witnesses . . . establish[ed] a genuine dispute of material fact as to whether he was denied proper access to witnesses" but granting summary judgment on other grounds); *Stroud*, 2024 WL 4513070, at *8 (D. Conn. Oct. 17, 2024) (allegations that the plaintiff was told he would not be able to call witness because he had been told "she could not testify in person" required "review of evidence beyond the standard permitted for a motion to dismiss," and therefore denying a motion to dismiss).

Although Defendant argues that Plaintiff has failed to offer non-conclusory allegations that the witness testimony would be exculpatory, (*see* Def.'s Mem. 7), Plaintiff's Amended Complaint, read charitably, offers enough details to plausibly state a procedural error that resulted in prejudice to Plaintiff. In particular, Plaintiff clearly alleges that he was not involved in any altercation and this assertion would have been supported by other witnesses and the video evidence. Plaintiff alleges that he was not involved in any altercation with the alleged victim. (Am. Compl. 4–5; *see also* Opp'n 1 ("[T]he victim . . . would have testified that I was not involved in an altercation with the victim."); Letter from Plaintiff to Court (May 15, 2025) 1 (explaining that Plaintiff "assert[s] . . . that <u>all</u> witnesses who would have provided testimony

22

exculpating [Plaintiff] from any wrongdoing[ ]were outright denied").)  Moreover, each of the cases cited by Defendant where the denial of witnesses was found *not* to state a due process claims involve facts not present here.  *See Castillo*, 2023 WL 7625882, at *5 (no due process violation where the plaintiff alleged that a witness herself refused to testify at the hearing, rather than alleging that the presiding officer failed to call the witness); *Louime v. Lamanna*, No. 21-CV-9594, 2023 WL 1385180, at *7 (S.D.N.Y. Jan. 31, 2023) (same); *Chavez*, 2021 WL 4248917, at *13 (concluding failure to call a witness would be harmless error at most, as the witness's testimony would only have "corroborated the information in [a] misbehavior report and [another individual's] testimony"); *Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 114–15 (W.D.N.Y. 2011) (dismissing a due process claim where all four witnesses requested by the plaintiff did, in fact, testify, and where complaint included no allegations to support what purportedly absent witness "would have testified *about*, much less what the substance" of her testimony would have been (emphasis added)).  In other words, Plaintiff did not allege that an official justifiably refused to call witnesses—due to the witnesses' refusal or the duplicative nature of their testimony—but rather alleged that the official refused to call witnesses without any proper justification.  This allegation is sufficient to state a due process claim.[8]

As the analysis is a holistic one, the Court does not separately analyze Plaintiff's allegations that Defendant wholly precluded Plaintiff from presenting evidence at the disciplinary proceeding.  Plaintiff says that he would have presented video camera recordings,

---

[8] Because it is clear that Plaintiff has plausibly alleged that the denial of his right to call witnesses was prejudicial insofar as it precluded him from calling the alleged victim, and because the Court concludes that the allegations taken collectively are sufficient to support a due process claim, the Court does not reach Defendant's further argument that Plaintiff's allegations as to the denial of Officer Sepulveda as a witness did not constitute a denial of his due process rights.  (*See* Reply 8.)

(*see* Am. Compl. 4–5; Opp'n 1), as well as medical records that would show he was uninjured after the alleged fight and had an inability to grasp anything with his right hand due to earlier surgeries, (Am. Compl. 5).  In his opposition brief, Plaintiff also argues that Defendant should have—but did not—subject the confidential informant to an independent credibility assessment. (Opp'n 2.)

Nevertheless, the Court notes that existing cases suggest that the allegations of video evidence being withheld without justification further support the conclusion that Plaintiff has adequately stated a due process claim at the motion to dismiss stage.  In actions premised on withheld video evidence where defendants challenge the existence of the video evidence, courts appear to address their existence or non-existence at the summary judgment stage, rather than on a Motion to Dismiss.  *See Girard v. Chuttey*, 826 F. App'x 41, 45–46 (2d Cir. 2020) (granting summary judgment for defendants where there was no evidence that the allegedly-withheld video ever existed) (summary order); *Brooks v. Piecuch*, 245 F. Supp. 3d 431, 447–48 (W.D.N.Y. 2017) (concluding, at summary judgment, that evidence did not support due process claim where, even viewed in light most favorable to non-movant, evidence suggested that the defendant had looked for video evidence but been unable to find any); *Brooks v. Prack*, 77 F. Supp. 3d 301, 318 (W.D.N.Y. 2014) (allegations that a defendant failed to permit the plaintiff to introduce evidence of refusal forms, testimony, alleged video tape, and certain photographs into evidence, where whether the evidence was justifiably excluded could not be determined from face of the complaint, sufficed to survive a motion to dismiss).[9]

---

[9] This is true of the case relied on by Defendant in her reply brief, (*see* Reply 7), *Molano v. Bezio*, 42 F. Supp. 3d 465, 468–69 (W.D.N.Y. 2012).  There, the court granted summary judgment to the defendant because there was "no proof" after discovery was complete that a surveillance video existed or that the videotape would have included exculpatory evidence.  *Id.*

24

Similarly, Plaintiff's allegation that no independent credibility assessment occurred, although somewhat conclusory when considered in isolation, plausibly suggests, in combination with the other allegations contained in his Amended Complaint, that he was not afforded due process. *See, e.g.*, *Sira*, 380 F.3d at 78 (explaining the need to make some assessment of credibility when a disciplinary charge rests upon information derived from confidential informants, as "[f]airness cannot be achieved without some assessment of the reliability of the evidence offered against the accused"); *Mohamed v. Phelix*, No. 14-CV-01389, 2017 WL 4326660, at *13 (N.D.N.Y. June 13, 2017) ("The Second Circuit has held, however, that where a disciplinary finding is based in part on evidence from confidential informants, the hearing officer must independently assess the credibility of the informants, considering the totality of the circumstances."), *report and recommendation adopted*, 2017 WL 4326520 (N.D.N.Y. Sept. 28, 2017); *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 610–11  (S.D.N.Y. 2009) (explaining that a proper assessment of an informant's credibility would involve an inquiry into that informant's record of reliability, and, if the testimony were based exclusively on hearsay, an inquiry into the reliability of the hearsay would be required).s

### III.  Conclusion

For the reasons set forth herein, Defendant's Motion is denied.  The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 28, to mail a copy of this Opinion to Plaintiff, and to amend the case caption as described above.

---

This case does not support the conclusion that records suggesting that a video tape did not exist are sufficient on a motion to dismiss to refute Plaintiff's allegations that such video existed and was improperly withheld.

The Court will hold a telephone conference on April 24, 2026 at 10:00 AM.  The telephone conference may be accessed by calling 605-472-5160 and using access code #4653066.

SO ORDERED.

Dated:    March 31, 2026
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

26